Filed 10/22/14  Williams v. County of San Bernardino CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| KARL JOHN WILLIAMS, | |
| Plaintiff and Appellant, | E057017 |
| v. | (Super.Ct.No. CIVRS1101825) |
| COUNTY OF SAN BERNARDINO et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Barry L. Plotkin, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

David H. Ricks & Associations and David H. Ricks for Plaintiff and Appellant.

Jean-Rene Basle, County Counsel, and James H. Thebeau, Deputy County Counsel, for Defendants and Respondents.

A sheriff's deputy responded to Karl Williams's (plaintiff) residence in response to a 911 call about men fighting.  Plaintiff became belligerent, refusing to comply with repeated directions and attempting to go inside the residence, so the deputy used a Taser

1

on plaintiff more than once, before taking him into custody for interfering with an officer. (Pen. Code, § 148, subd. (a)(1).) Plaintiff eventually pled guilty to an infraction (Pen. Code, § 415),[1] filed a claim against the County of San Bernardino (the County), and then brought this action for violation of his civil rights pursuant to title 42 of the United States Code, section 1983, assault and battery, false arrest or imprisonment, intentional infliction of emotional distress, violation of Civil Code sections 51.7 and 52.1, and negligence. The County and the deputy (collectively, defendants) first filed a motion for judgment on the pleadings, which resulted in dismissal of several of the causes of action without leave to amend, followed by a successful motion for summary judgment, disposing of the remainder of the complaint. Plaintiff appealed.

On appeal, plaintiff argues, among other things, that his civil rights claims were not barred by his conviction on the infraction, that his government claim adequately presented all theories of liability, and that the deputy was not covered by qualified immunity. We affirm.

**BACKGROUND**

Because a motion for judgment on the pleadings performs the same function as a general demurrer, attacking defects disclosed on the face of the pleadings or by matters subject to judicial notice, we accept as true the complaint's factual allegations and give them a liberal construction. (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057,

---

[1] The change of plea form does not indicate to which subdivision of section 415 plaintiff entered his plea.

1064-1065.) We also rely upon facts as adduced from the record before the superior court in reviewing the defendants' summary judgment motion.

On the evening of April 27, 2010, at approximately 9:30 p.m., Sheriff's Deputy J. Tebbetts pulled his cruiser into the driveway of plaintiff's residence, exited the vehicle, and approached the garage. Tebbetts was responding to an emergency 911 call reporting a fight between two males. Plaintiff was sitting in the garage with his friend, Dan Cliff, watching television. The garage door was partially open, so Tebbetts bent down and informed plaintiff he had been dispatched to the location in reference to a fight. Plaintiff informed Tebbetts that he and Cliff had been drinking.

Tebbetts asked the two men to exit the garage. Cliff complied, but plaintiff was uncooperative. Plaintiff was in an agitated state and refused to comply with Tibbetts's commands to step out of the garage and away from areas that posed a danger to Tebbetts's safety.[2] Plaintiff refused to produce identification despite being repeatedly asked. Plaintiff demanded that Tibbetts leave the property, and announced, in defiance of the deputy's commands, that he was going inside and that Tebbetts had no reason or right to be there. As plaintiff moved back, his body was in a "bladed position." Given plaintiff's conduct and potential access to weapons inside the residence, Tebbetts believed that plaintiff posed a threat to his safety.

---

[2] Although plaintiff disputed that he was in an agitated state, the trial court reviewed the belt recording of the encounter and determined that plaintiff's version was at odds with the belt recorder.

3

As plaintiff re-entered the garage, Tebbetts unholstered his Taser, ordered plaintiff to step outside, and warned him that he would be tased if he did not comply. Plaintiff moved back inside the garage and in the direction of the door to the interior of the house. Tebbetts deployed the Taser, which was ineffective, and plaintiff continued to step backward away from the deputy. Plaintiff directed expletives at Tebbetts, and swiped his arm over his chest area, preventing the Taser from making proper contact. Tebbetts then deployed the Taser a second time, striking plaintiff in his chest and abdomen. Plaintiff fell in front of the door leading into the house and removed the Taser probes from his chest, rendering the cycle ineffective.

Tebbetts approached plaintiff and instructed him to roll over and place his hands behind his back multiple times. Plaintiff refused to put his hands behind his back. Plaintiff continued to resist, so Tebbetts threatened to pepper spray him. Plaintiff finally rolled over onto his stomach, placing his hands behind his back. Tebbetts placed plaintiff under arrest for violation of Penal Code section 148, subdivision (a)(1), resisting, obstructing, or delaying a peace officer in the performance of his duty.

On August 11, 2010, plaintiff filed a claim against the County of San Bernardino seeking damages based on the following circumstances: "Claimant Williams was inside his garage when he was approached by San Bernardino County Sheriff Deputy J. Tebbetts. Without provocation and warning, Deputy J. Tebbetts discharges [*sic*] his Taser weapon at Mr. Williams, not once, but twice, resulting in significant physical injuries to Mr. Williams." On September 7, 2010, the County rejected plaintiff's claim.

On February 17, 2011, plaintiff filed a civil complaint against Deputy Tebbetts and his employer, the County, alleging seven causes of action: (1) Violation of civil rights (42 U.S.C § 1983); (2) assault; (3) battery; (4) false arrest and imprisonment; (5) intentional infliction of emotional distress; (6) violation of Civil Code sections 51.7, 52, and 52.1; and (7) negligence.[3]

On June 9, 2011, plaintiff pled guilty to an infraction violation of Penal Code section 415, disturbing the peace, pursuant to a plea agreement.

On July 6, 2011, defendants answered the complaint, raising several affirmative defenses. On December 21, 2011, the County and Tebbetts made a motion for judgment on the pleadings as to the first, fourth, fifth, sixth and seventh causes of action. The grounds for the motion included the fact that (a) the causes of action were barred by plaintiff's subsequent conviction arising from the subject arrest, (b) the County cannot be held vicariously liable for a civil rights violation, (c) he failed to present all claims in his government tort claim, and (d) he failed to allege outrageous conduct for intentional infliction of emotional distress. In support of the motion, the County requested that the court take judicial notice of plaintiff's plea of guilty to the infraction violation of Penal Code section 415, his government tort claim, and the notice of rejection of that claim by the County.

On February 28, 2012, the trial court granted the motion for judgment on the pleadings as follows: as to the County, the motion was granted without leave to amend

_____

[3] The first, fourth, fifth, sixth and seventh causes of action were against all defendants; the second and third causes of action were directed to Tebbetts.

5

as to the first, fourth, sixth and seventh causes of action; as to Tebbetts, the motion was granted as to the fourth, sixth, and seventh causes of action, without leave to amend. As to Tebbetts, the motion was denied as to the first and fifth causes of action.[4]

On March 16, 2012, defendants filed a motion for summary judgment as to the first (as to Tebbetts), second, and third causes of action (as to all defendants). In support of the motion, the County submitted a transcript of the belt recording made contemporaneously with the incident, along with declarations of Tebbetts and Dan Cliff (plaintiff's companion in the garage) and extracts from their deposition transcripts. On June 5, 2012, the court granted the motion for summary judgment as to the balance of the complaint. The trial court awarded costs to the defendants. On August 24, 2012, plaintiff appealed from the judgment.

**DISCUSSION**

1.      *The Motion for Judgment on the Pleadings as to Counts 4 through 7.*

Plaintiff challenges the order granting judgment on the pleadings, which resulted in dismissal without leave to amend counts 1 (civil rights violation as to the County only), 4 (false arrest/imprisonment), 5 (intentional infliction of emotional distress), 6 (state civil rights violations, Civ. Code, §§ 51.7, 52, 52.1), and 7 (negligence).

---

[4] At oral argument on the motion, the trial court also granted the motion as to Tebbetts on the fifth cause of action, although that was not reflected in the minutes. The formal written order indicates that as to Tebbetts, the motion was also granted as to the fifth cause of action.

6

a.   *Standard of Review—Motion for Judgment on the Pleadings.*

Motions for judgment on the pleadings may be made on grounds that the court lacks jurisdiction of the subject of the cause of action, or the pleading does not state facts sufficient to constitute a cause of action.  (Code Civ. Proc., § 438, subd. (c)(1)(B); *Protect Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2014) 223 Cal.App.4th 550, 556.)  Such a motion performs the same function as a general demurrer, attacking only defects disclosed on the face of the pleadings or by matters that can be judicially noticed.  (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1064.)

The standard of review for a motion for judgment on the pleadings is the same as that for a demurrer.  (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 416.)  We accept as true the complaint's factual allegations and give them a liberal construction.  (*Burnett v. Chimney Sweep*, *supra*, 123 Cal.App.4th at p. 1065.)  We also consider evidence outside the pleadings which the trial court considered without objection.  (*Ibid*., citing *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1721; see also, *Hood v. Santa Barbara Bank & Trust* (2006) 143 Cal.App.4th 526, 535.)  We render our independent judgment on whether a cause of action has been stated and are not bound by the determination of the trial court.  (*Burnett*, at pp. 1064-1065.)

b.   *Judgment on the Pleadings as to the First Cause of Action (County), and the Fourth Cause of Action (County and Tebbetts) Were Proper.*

The trial court granted the motion for judgment on the pleadings on the first cause of action for violation of plaintiff's civil rights (as to the County only), and the fourth

cause of action for false arrest or imprisonment (both the County and Tebbetts). Plaintiff argues that the court erred in holding his claims were barred by the holdings of *Heck v. Humphrey* (1994) 512 U.S. 477 (*Heck*) and *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, due to defendant's plea to an infraction under Penal Code section 415. We disagree.

A section 1983 action should be allowed to proceed only when the plaintiff's action, even if successful, will not demonstrate the invalidity of *any* outstanding criminal judgment against the plaintiff. (*Yount v. City of Sacramento*, *supra,* 43 Cal.4th at p. 896.) A plaintiff may not avoid the *Heck* bar merely by asserting a "theoretical possibility" that the criminal conviction and the civil action could coexist. (*Okoro v. Callaghan* (7th Cir. 2003) 324 F.3d 488, 490.) To prevail on a his section 1983 claim for false arrest and imprisonment, a plaintiff must demonstrate that there was no probable cause to arrest him. (*Cabrera v. City of Huntington Park* (9th Cir. 1998) 159 F.3d 374, 380.)

A conviction for disorderly conduct implies the existence of probable cause for arrest, which is fundamentally inconsistent with an individual's false arrest claim. (*Rosales v. City of Phoenix* (D. Ariz. 1999) 202 F.Supp.2d 1055, 1059, citing *Cabrera v. City of Huntington Park, supra,* 159 F.3d at p. 380.) The same reasoning applies to a conviction for disturbing the peace.

Thus, not being convicted of the charge for which a claimant has been arrested is not synonymous with a favorable termination. (*Lujano v. County of Santa Barbara* (2010) 190 Cal.App.4th 801, 804-805, 808 [plaintiff was arrested for obstructing an investigation, placed on informal probation pursuant to Welf. & Inst. Code, § 654, was

8

barred from bringing action under 42 U.S.C. §1983 for false arrest, battery, negligence, intentional infliction of emotional distress, excessive force, and acts or omissions of public employees].)

Under *Heck*, *supra*, 512 U.S. 477, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal. (*Heck*, at pp. 486-487.) If a judgment for plaintiff on his section 1983 claim would necessarily imply the invalidity of his conviction, *Heck* bars a plaintiff from bringing a cause of action until his conviction is overturned. (*Cabrera v. City of Huntington Park*, *supra*, 159 F.3d at p. 380.) However, a claim for excessive force in effectuating the arrest is not barred under *Heck*, because it does not imply the invalidity of the conviction. (*Id.* at pp. 380-381.)

An arrestee's claims that officers were unjustified in the use of force are inconsistent with a conviction for resisting officers and are barred by *Heck*. (*Yount v. City of Sacramento*, *supra*, 43 Cal.4th at p. 893.) A suspect's resistance may justify the use of reasonable force in response. (*Id.* at p. 898.) Thus, in order to recover damages for an unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a tribunal authorized to make that determination, or called into question by the issuance of a writ of habeas corpus by a

federal court. (*Lujano v. County of Santa Barbara*, *supra*, 190 Cal.App.4th at p. 807, citing *Yount*, *supra*, 43 Cal.4th at pp. 893-894.)

Although plaintiff pled guilty to a lesser offense, a judgment in his favor on the civil rights claim would necessarily imply the invalidity of the conviction, which flowed from the arrest. The action was barred, and the court properly granted judgment on the pleadings as to the first cause of action.

c.    *Failure to Comply With Government Claim Statute Requirements.*

In the motion for judgment on the pleadings, defendants argued that all state law causes of action other than assault and battery were barred by Government Code sections 910 and 911.2 for failing to specifically set forth factual circumstances corresponding to any other theories. The claim merely alleged that Tebbetts had twice discharged his Taser at plaintiff. The trial court found that there was significant variance between the allegations of his government tort claim and the theories alleged in the complaint. Plaintiff claims this was error. We disagree.

Government Code section 910 sets forth the necessary contents of a tort claim against a public entity, requiring that it state the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted and provide a "general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." The filing of a proper claim pursuant to Government Code section 910 is a condition precedent to the maintenance of an action against the governmental entity caused by tort. (*Donohue v. State of California* (1986) 178 Cal.App.3d 795, 802.)

10

The purpose of the claim statutes is to provide the public entity sufficient information to enable it to adequately investigate and settle claims, if appropriate, without the expense of litigation. (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 (*Stockett*).) A claim need not contain the detail and specificity required of a pleading, but needs to fairly describe what the entity is alleged to have done. (*Ibid.*, quoting *Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1426; *Turner v. State of California* (1991) 232 Cal.App.3d 883, 888.)

A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts. (*Stockett*, *supra*, 34 Cal.4th at p. 447, citing *Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 278.) However, if a plaintiff relies on more than one theory of recovery against the governmental agency, each cause of action must have been reflected in a timely claim, and the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint. (*Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431, 434; *Donohue v. State of California, supra,* 178 Cal.App.3d at pp. 802-803.)

Further, where there has been a complete shift in allegations, involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim, courts have found the complaint barred. (*Stockett*, *supra*, 34 Cal.4th at p. 447, citing *Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 226.) In other words, where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to

act by the defendants, courts have found the claim fairly reflects the facts pled in the complaint. (*Stockett*, at p. 447, citing *White v. Superior Court* (1990) 225 Cal.App.3d 1505, 1510-1511.)

Plaintiff argues that his claim was sufficient because it provided enough information for the public entity to investigate the claim, relying on *Stockett*, *supra*, 34 Cal.4th 441 and *Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051. However, in each of those cases, the causes of action set forth in the complaint were based on the same factual circumstances presented in the claim.

In the present case, the acts described in the tort claim (that Tebbetts deployed his Taser twice without justification) does not allege facts that would inform the governmental entity of a civil rights violation arising out of an unlawful detention or arrest, or false imprisonment. The deployment of the Taser, constituting assault, battery or excessive force, may be accomplished by an officer without detaining or arresting a suspect. As we read the language of the claim, Deputy Tebbetts simply approached plaintiff and tased him without provocation. The claim fails to mention that plaintiff was unlawfully detained or arrested or that his Fourth Amendment right of privacy was violated.

There are insufficient facts included in the claim to support the subsequent causes of action for false arrest/imprisonment, intentional infliction of emotional distress, violation of state civil rights, or negligence. An officer can discharge his Taser without detaining or arresting a suspect, so the omission of those facts was fatal to plaintiff's

12

claim.  The failure to comply with the government tort claims statutes bar those causes of action.

      d.     *Judgment on the Pleadings as to the Emotional Distress Claim was Properly Granted.*

Plaintiff argues that the court erred in granting judgment on the pleadings as to his cause of action for intentional infliction of emotional distress.  We disagree.

The elements of a prima facie case for the tort of intentional infliction of emotional distress are:  (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903, quoting *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209.)

Conduct, to be considered outrageous, must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.  (*Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1108.)  Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not sufficient for liability based on intentional infliction of emotional distress.  (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 809.)  Further, the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result.  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)

13

The complaint alleged that defendant Tebbetts assaulted and battered plaintiff, falsely arrested and imprisoned him, and wrongfully deprived him of his civil rights. The complaint does not allege "extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of cause, emotional distress," nor does it allege that plaintiff suffered severe emotional distress. The motion for judgment on the pleadings was properly granted.

    e.    *Judgment on the Pleadings Was Properly Granted as to the State Civil Rights Cause of Action.*

Plaintiff argues that the court erred in dismissing his cause of action based on violations of the Civil Code section 52.1. We disagree.

Civil Code section 52.1, subdivision (b) (also known as the Tom Banes Civil Rights Act, or the Bane Act), creates a private right of action for individuals whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in Civil Code section 52.1, subdivision (a). The elements of the cause of action are that the defendant must have interfered, by threats, intimidation, or coercion, with the plaintiff's exercise of rights secured by the federal and state constitutions or law.

The essence of a Bane Act claim is that the defendant, by the specified improper means, tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law. (*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th

14

947, 955-956.) The statutory framework of section 52.1 reveals a legislative intent to address interference with constitutional rights involving more egregious conduct than mere negligence. (*Id.* at p. 958.)

Where an arrest is unlawful and excessive force is applied in making the arrest, there is coercion independent from the coercion inherent in the wrongful detention itself, which may give rise to a violation of the Bane Act. (*Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 978.) But there is no constitutional right to resist arrest or to interfere with a peace officer's investigation of a 911 call.

Here, plaintiff's complaint does not allege that he had a constitutional right to interfere with the deputy's investigation of the 911 call, or that he had a constitutional right to disturb the peace of his neighbors. His arrest is presumptively valid because it led to a guilty plea to a lesser offense pursuant to a plea bargain, which has not been reversed. The deputy was authorized by statute to use reasonable force in making the arrest. (Pen.Code, § 835a.)

On the face of the complaint, there was no violation of the Bane Act. Plaintiff's cause of action was properly dismissed on motion for judgment on the pleadings.

      f.    *The Motion for Judgment on the Pleadings Was Properly Granted as to the Negligence Cause of Action.*

Plaintiff argues the court improperly dismissed his cause of action for negligence against the County and Tebbetts. We disagree.

Peace officers have a duty to act reasonably when using force, but the reasonableness of an officer's conduct is determined in light of the totality of the

15

circumstances. (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 629.) To state a cause of action for negligence, the plaintiff must prove a legal duty to use due care, a breach of that duty, and that the breach was the proximate cause of the resulting injury. (*Hernandez v. City of San Jose* (1993) 14 Cal.App.4th 129, 133.) Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for any injury of that kind proximately caused by its failure to discharge the duty unless it establishes it exercised reasonable diligence to discharge the duty. (*MacDonald v. California* (1991) 230 Cal.App.3d 319, 326-327.)

An officer is justified in the use of reasonable force to detain or arrest a suspect, prevent escape, or overcome resistance, and need not desist in the face of resistance. (Pen. Code, § 835a; *Burton v. Sanner* (2012) 207 Cal.App.4th 12, 21.) The test of whether an officer was objectively reasonable under all the circumstances is highly deferential to the officer's need to protect himself and others. (*Ibid.*) The statutory authorization to use reasonable force negates any inference that an officer has a duty to refrain from using force within the meaning of Penal Code, section 835a. Further, plaintiff cites no authority for the proposition that the use of reasonable force in detaining, arresting, preventing escape or overcoming resistance constitutes a breach of duty.

The complaint alleges that defendants owed a duty not to use excessive force against him, and not to falsely arrest or imprison him, which was breached to his damage. In opposition to the motion, and again on appeal, plaintiff cited no authority for the

16

proposition that the use of a Taser against a resistant suspect constitutes a breach of a duty of care where deadly force was not employed. Given the statutory authorization to use force, and the absence of allegations of the use of deadly force, the complaint does not properly plead a duty, or a breach of duty, of care.

2. *The Order Granting Summary Judgment as to Counts 1 through 3.*

Plaintiff argues the trial court erred in granting summary judgment on the first three causes of action (civil rights violations, assault, and battery) based on its determination that the County was immune, and Tebbetts was protected by qualified immunity. We disagree.

a. *Standard of Review*

Summary judgment is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250; Code Civ. Proc., § 437c, subds. (b), (o).) A defendant meets his burden of showing that a cause of action lacks merit if he shows that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Ortega v. Sacramento County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 716.) The purpose of a motion for summary judgment is to discover whether the parties possess evidence which requires the fact-weighing procedures of a trial. (*Soto v. County of Riverside* (2008) 162 Cal.App.4th 492, 496, quoting *City of Oceanside v. Superior Court* (2000) 81 Cal.App.4th 269, 273.)

17

We review the trial court's decision *de novo*, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476, citing *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.) Because we review independently, or *de novo*, the trial court's stated reasons for granting summary judgment are not binding on us; we review the ruling, not the rationale. (*Soto v. County of Riverside, supra,* 162 Cal.App.4th at p. 496; *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

> b.  *The County and Tebbetts Are Immune From Suit.*

The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. (*Wood v. Moss* (2014) ___U.S.___ [134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039].) The dispositive theory is whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation confronted. (*Ibid.*, citing *Saucier v. Katz* (2001) 533 U.S. 194, 202 [121 S.Ct. 2151, 150 L.Ed.2d 272].)

Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (*Hope v. Pelzer* (2002) 536 U.S. 730, 741 [122 S.Ct. 2508, 153 L.Ed.2d 666].) The salient question is whether the state of the law at the time of an incident provided "fair warning" to the defendants that their alleged conduct was unconstitutional. (*Ibid.*)

To determine whether an officer is entitled to qualified immunity for an unlawful arrest, a two part test is employed. First, applying the facts in the light most favorable to the plaintiff, we determine whether the deputy violated the plaintiff's constitutional rights. (*Saucier v. Katz*, *supra*, 533 U.S. at p. 201, overruled on a different point in *Pearson v. Callahan* (2009) 555 U.S. 223, 236 [129 S.Ct. 808, 172 L.Ed.2d 565].) Second, if we decide that a constitutional violation occurred, we determine whether the rights violated were "clearly established." (*Draper v. Reynolds* (11th Cir. 2004) 369 F.3d 1270, 1274-1275.)

Here, plaintiff did not have a constitutional right to resist arrest or interfere with the deputy's investigation of the 911 call regarding men fighting. Further, Tebbetts was authorized by statute to use reasonable force to detain or arrest plaintiff. As to the first cause of action for violation of title 42 of the United States Code, section 1983, we do not need to reach the second prong of the test for immunity because the deputy violated no constitutional right of plaintiff in making the arrest.

Turning to the assault and battery causes of action (excessive force), a claim that law enforcement officers used excessive force is governed by the Fourth Amendment's "reasonableness" standard. (*Plumhoff v. Rickard* (2014) ___U.S.___[134 S.Ct. 2012, 2020, 188 L.Ed.2d 1056]; *Allgoewer v. City of Tracy* (2012) 207 Cal.App.4th 755, 762.) The question is analyzed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. (*Plumhoff*, at p. 2020.) The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it. (*Saucier v. Katz*, *supra*, 533 U.S. at p. 208.)

19

In determining whether excessive force shocks the conscience, the court must determine whether the circumstances were such that actual deliberation by the officer is practical. (*Hayes v. County of San Diego* (9th Cir. 2013) 736 F.3d 1223, 1230.) The inquiry into whether a suspect's constitutional rights have been violated requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests alleged to justify the intrusion. (*Tolan v. Cotton* (2014) ___ U.S. ___ [134 S.Ct. 1861, 1865, 188 L.Ed.2d 895; *Graham v. Connor* (1989) 490 U.S. 386, 396 [109 S.Ct. 1865, 104 L.Ed.2d 443].)

The test for reasonableness involves several considerations: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. (*Graham v. Connor*, *supra*, 490 U.S. at p. 396; *Mattos v. Agarano* (9th Cir. 2011) 661 F.3d 433, 441[discussing *Graham*].) These factors are not exclusive, and we must consider the totality of circumstances. (*Gonzalez v. City of Anaheim* (9th Cir. 2014) 747 F.3d 789, 794-795.) The most important factor is whether the suspect posed an immediate threat to the safety of officers. (*Mattos*, at p. 441.)

A Taser employed in dart-mode constitutes an intermediate, significant level of force. (*Mattos v. Agarano*, *supra*, 661 F.3d at p. 449.) However, Tasers carry a significantly lower risk of injury than physical force, such that the vast majority of individuals subjected to a Taser suffer no injury or only a mild injury. (*Hagans v. Franklin County Sheriff's Office* (6th Cir. 2012) 695 F.3d 505, 510.) Use of a Taser on a suspect who resisted arrest was justified in *Hagans,* despite the fact the suspect died,

because it was not clearly established in May 2007 (when the incident occurred) that using a Taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed amounted to excessive force.

In *Mattos v. Agarano*, a pregnant woman was tased during a traffic stop, in which she refused to sign a citation or exit her car.  The Ninth Circuit determined that a constitutional violation had occurred, but nonetheless found the officer was entitled to qualified immunity because he did not violate clearly established law when he tased her. (*Mattos v. Agarano*, *supra*, 661 F.3d at pp. 446-448.)

More recent federal cases have recognized that the use of a Taser can, under certain circumstances, constitute excessive force, depending on the factors present (the seriousness of the crime, whether the suspect was actively resisting arrest).  (*Gravelet-Blondin v. Shelton* (9th Cir. 2013) 728 F.3d 1086, 1093, fn. 6, citing *Shekleton v. Eichenberger* (8th Cir. 2012) 677 F.3d 361, 366-367 [tasing an unarmed suspected misdemeanant, who did not resist, did not threaten the officer, did not attempt to run from him and did not behave aggressively, was excessive]; *Cavanaugh v. Woods Cross City* (10th Cir. 2010) 625 F.3d 661, 667 [court held police officer could not tase a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning]; *Brown v. City of Golden Valley* (8th Cir. 2009) 574 F.3d 491, 497 [tasing an individual who posed a minimal safety threat and was not actively resisting arrest or attempting to flee was unconstitutional]; *Oliver v. Fiorino* (11th Cir. 2009) 586 F.3d 898, 906-908 [it was excessive to tase suspect multiple times where he was immobilized after the first tasing].)  However, we have found no cases holding that, as a

21

matter of law, the use of a Taser to subdue a detainee constitutes, in all cases, a constitutional violation.

Here, the officer was confronted with two individuals who had been drinking and who were reportedly engaged in a fight. One suspect complied with the officer's directions by exiting the garage, but plaintiff became loud and belligerent, refused to comply with directions, and attempted to enter the residence, where the officer feared he would obtain a weapon after taking a "bladed" stance. Plaintiff was not merely passively resisting, and the 911 call of men fighting is not a trivial violation.

The officer did not violate clearly established law when he tased plaintiff, given the reasonable concern for officer safety under the circumstances, the statute authorizing reasonable force to make an arrest, and the intermediate level of force represented by the Taser. As the United States Supreme Court cautioned in *Graham v. Connor*, we evaluate the reasonableness of the use of force from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight. (*Graham v. Connor*, *supra*, 490 U.S. at p. 396.) Under the circumstances, the deputy was entitled to qualified immunity. The trial court properly granted summary judgment in favor of defendants.

## DISPOSITION

The judgment is affirmed. Defendants are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
              P. J.

We concur:

22

HOLLENHORST

        J.

MILLER

        J.